---

(No. 15369.—Judgment reversed; order set aside.)
JOSEPH K. CHOATE, Receiver, *et al.* Appellants, *vs.* THE COMMERCE COMMISSION, Appellee.

*Opinion filed June 20, 1923—Rehearing denied October 4, 1923.*

1. PUBLIC UTILITIES—*Public Utilities act is designed to protect common carrier from ruinous competition.* The theory of the Public Utilities act is to provide the public with efficient service at a reasonable rate by compelling an established carrier occupying a given field to provide adequate service, and at the same time to protect the existing utility from ruinous competition.

2. SAME—*an order of convenience and necessity must relate to public need as distinguished from individuals.* The convenience and necessity which the Public Utilities act requires in order to support an order of the Commerce Commission are the convenience and necessity of the public as distinguished from that of an individual or any number of individuals.

3. SAME—*when order of convenience and necessity for establishing a bus line is not warranted.* An order of convenience and necessity for the establishment of a motor bus line is not warranted where the proof shows that a traction company already occupies

the identical route and is furnishing the public with more adequate service than could be furnished by the bus line.

4. SAME—*when order of Commerce Commission must be set aside.* Where it is found that an order of the Commerce Commission is without substantial foundation in the evidence it is the duty of the courts to set it aside.

APPEAL from the Circuit Court of Kane county; the Hon. ADAM C. CLIFFE, Judge, presiding.

ALSCHULER, PUTNAM & FLANNIGEN, (GLENN T. JOHNSON, of counsel,) for appellants.

EDWARD J. BRUNDAGE, Attorney General, for appellee.

FRANK A. McCARTHY, and J. V. McCARTHY, for the Smith Bus Line.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

The Commerce Commission granted a certificate of convenience and necessity to the Smith Bus Line, Inc., and on appeal the order of the commission was confirmed by the circuit court of Kane county. This appeal followed.

By virtue of the order of the commission the bus line is authorized to operate busses over the paved highways of the State between Aurora and Elgin. This territory is now served by the Aurora, Elgin and Chicago Railroad Company, which furnishes an electric interurban service. The territory has a population of about 100,000, of which 40,000 is in Aurora. About seven miles north of Aurora is the city of Batavia, with a population of 4000. Between these cities are Lovedale, North Aurora and Mooseheart. Three miles north of Batavia is Geneva, the county seat, with a population of 3000, and two miles north of Geneva is St. Charles, a city of 4000 population. Elgin, with its 30,000 people, is about eight miles north of St. Charles. Between St. Charles and Elgin are Coleman and South El-

gin. A State hospital for the insane is located at Elgin, a State school for delinquent boys at St. Charles, a State school for delinquent girls at Geneva, and a home and school for children of Moose at Mooseheart, about a mile south of Batavia. Fox river runs through all these cities and villages and the railroad and the paved highway practically parallel the river. For all practical purposes the proposed bus line will serve exactly the same territory that is now being served by the traction line. Between Batavia and Geneva the traction line is on the west side of the river and the bus line will run on the east side. The people in East Batavia are now required to walk about half a mile across the river to the railroad station. On the highway between these two cities are three farm houses. Between St. Charles and Coleman the traction line is on the east side of the river and the bus line is to operate over the paved highway on the west side. There are twenty farmers living along this highway and seventeen of them have automobiles.

Ten witnesses testified that the interurban company provided inadequate service; that the cars were crowded; that persons employed in the factories located in the valley were compelled to crowd into the cars going to and returning from their work; that often they had to ride on the steps and on the fenders of the cars. Five of them testified that there was an interruption of service every time there was a storm; that there were frequent interruptions due to lightning, and that every snowstorm stopped or delayed the cars. Fifteen witnesses who used the service daily testified that the service was good; that except at rush hours there were plenty of seats for all of the passengers; that extra cars were provided at rush hours, and that there were usually but a few persons who were compelled to stand and they only for a short distance; that interruptions in the service on account of storms were very rare; that special cars were always provided when special occasions demanded extra service. There is no evidence that a complaint was ever filed

with the Commerce Commission or that the commission was ever requested to order the receiver to provide more adequate service. Below we give a train schedule showing twenty-two trains operating daily from Aurora to Elgin and practically twice that many trains operating from Aurora to Batavia:

| Service Aurora to Elgin Daily, except Sat. and Sun. | | | Summary of service Aurora-Elgin line |
|---|---|---|---|
| Leaving Aurora | Arriving Batavia | Arriving Elgin | Daily, except Sat. and Sun. |
| 5:30 A.M. | 5:54 A.M. | 6:48 A.M. | 41 trains are operated out of Aurora, 41 going to or beyond Mooseheart, 38 to or beyond Batavia, 26 to or beyond Geneva, 24 to or beyond St. Charles and 22 through to Elgin. |
| 5:40 A.M. | 6:04 A.M. | | |
| 6:00 A.M. | 6:25 A.M. | | |
| 6:30 A.M. | 6:58 A.M. | | |
| 6:30 A.M. | 6:58 A.M. | 7:56 A.M. | |
| 7:00 A.M. | 7:28 A.M. | 8:28 A.M. | 22 trains are operated out of Elgin, 26 out of St. Charles, 28 out of Geneva, 39 out of Batavia and 42 out of Mooseheart, making a total of 42 trains into Aurora. |
| 7:30 A.M. | 8:00 A.M. | | |
| 7:30 A.M. | 8:00 A.M. | 8:56 A.M. | |
| 8:30 A.M. | 9:00 A.M. | 9:56 A.M. | |
| 9:30 A.M. | 10:00 A.M. | 10:56 A.M. | |
| 10:30 A.M. | 11:00 A.M | 11:56 A.M. | |
| 11:30 A.M. | 12:00 Noon | 12:56 P.M. | *Saturday only* |
| 12:00 Noon | 12:28 P.M. | | 52 trains are operated out of Aurora, 52 going to or beyond Mooseheart, 49 to or beyond Batavia, 26 to or beyond Geneva, 25 to or beyond St. Charles and 22 through to Elgin. |
| 12:30 P.M. | 1:00 P.M. | 1:56 P.M. | |
| 1:00 P.M. | 1:28 P.M. | | |
| 1:30 P.M. | 2:00 P.M. | 2:56 P.M. | |
| 2:00 P.M. | 2:28 P.M. | | |
| 2:30 P.M. | 3:00 P.M. | 3:56 P.M. | |
| 3:00 P.M. | 3:28 P.M. | | 22 trains are operated out of Elgin, 25 out of St. Charles, 28 out of Geneva, 50 out of Batavia, 52 out of Mooseheart, making a total of 52 trains into Aurora. |
| 3:30 P.M. | 4:00 P.M. | | |
| 3:30 P.M. | 4:00 P.M. | 4:56 P.M. | |
| 4:00 P.M. | 4:30 P.M. | | |
| 4:00 P.M. | 4:30 P.M. | 5:26 P.M. | |
| 4:30 P.M. | 5:00 P.M. | 5:56 P.M. | |
| 4:30 P.M. | 5:00 P.M. | | |
| 4:50 P.M. | 5:23 P.M. | | *Sunday only* |
| 5:00 P.M. | 5:30 P.M. | 6:28 P.M. | 36 trains are operated out of Aurora, 36 going to or beyond Batavia, 24 to or beyond Geneva, 22 to or beyond St. Charles and 20 through to Elgin. |
| 5:20 P.M. | 5:52 P.M. | | |
| 5:30 P.M. | 6:00 P.M. | 6:56 P.M. | |
| 5:50 P.M. | 6:22 P.M. | | |
| 6:00 P.M. | 6:30 P.M. | 7:26 P.M. | |
| 6:30 P.M. | 7:00 P.M. | 7:56 P.M. | |
| 7:30 P.M. | 8:00 P.M. | 8:56 P.M. | 20 trains are operated out of Elgin, 22 out of St. Charles, 24 out of Geneva, 36 out of Batavia, making a total of 36 trains into Aurora. |
| 8:30 P.M. | 9:00 P.M. | 9:56 P.M. | |
| 9:00 P.M. | 9:28 P.M. | | |
| 9:30 P.M. | 10:00 P.M. | 10:56 P.M. | |
| 10:00 P.M. | 10:28 P.M. | | |
| 11:00 P.M. | 11:30 P.M. | 12:26 P.M. | |

The above table shows that trains are operated with unusual frequency and that during rush hours there are trains between the most populous points every few minutes.

We give below the passenger check made at the city limits of Aurora, where the traffic is heaviest, and a comparative count of the loads carried by the busses:

*PASSENGER CHECK—AURORA CITY LIMITS*

| Southbound—In—Dec. 21 | | | | | Northbound—Out—Dec. 24 | | | | |
| A. E. & C. CARS | | | BUSSES | | A. E. & C. CARS | | | BUSSES | |
| Time | Capacity | Passengers | Time | Passengers | Time | Capacity | Passengers | Time | Passengers |
|---|---|---|---|---|---|---|---|---|---|
| 6:30 A.M. | 48 | 27 | 6:30 A.M. | 15 | 6:42 | 44 | 15 | | |
| 6:32 | 48 | 22 | | | 6:43 | 48 | 20 | | |
| 7:20 | 48 | 47 | 7:15 | 13 | 7:12 | 48 | 30 | 7:08 A.M. | 15 |
| 7:46 | 44 | 29 | | | 7:35 | 44 | 24 | 7:33 | 10 |
| 7:48 | 48 | 35 | 7:50 | 10 | 7:36 | 48 | 27 | | |
| 8:10 | 44 | 8 | | . | 7:40 | 48 | 20 | 8:05 | 7 |
| 8:20 | 48 | 21 | 8:15 | 15 | 8:45 | 48 | 27 | 8:15 | 10 |
| 8:25 | 48 | 20 | | | 9:42 | 44 | 1 | 8:30 | 2 |
| 8:50 | 48 | 16 | | | 9:44 | 48 | 16 | 9:15 | 2 |
| 9:20 | 48 | 48 | 9:15 | 10 | 10:12 | 48 | 9 | 9:35 | 5 |
| 9:50 | 48 | 12 | | | 10:43 | 48 | 43 | 10:02. | 3 |
| 10:20 | 48 | 30 | 10:20 | 5 . | 11:14 | 48 | 15 | 10:33 | 5 |
| 10:50 | 48 | 6 | 10:45 | 1 | 11:15 | 48 | 0 | | |
| 11:20 | 48 | 38 | 11:30 | 5 | 11:16 | 42 | 0 | | |
| 11:50 | 48 | 10 | | | 11:40 | 44 | 4 | 11:35 | 10 |
| 12:20 P.M. | 48 | 44 | 12:10 P.M. | 0 | 11:45 | 48 | 27 | | |
| 12:50 | 48 | 27 | 12:35 | 3 | 12:15 P.M. | 48 | 19 | 12:11 P.M. | 1 |
| 1:20 | 48 | 29 | 1:07 | 7 | 12:45 | 44 | 5 | 12:35 | 4 |
| 1:50 | 48 | 22 | 1:45 | 6 | 12:47 | 48 | 30 | | |
| 2:20 | 48 | 36 | 2:20 | 11 | 1:18 | 48 | 10 | 1:05 | 7 |
| 2:50 | 48 | 30 | | | 1:45 | 48 | 54 | 1:30 | 12 |
| 3:18 | 48 | 51 | 3:10 | 1 | 2:13 | 48 | 9 | 2:07 | 15 |
| 3:51 | 48 | 25 | 3:36 | 5 | 2:45 | 44 | 2 | 2:38 | 10 |
| 4:20 | 48 | 33 | 4:16 | 22 | 2:46 | 48 | 40 | | |
| 4:50 | 48 | 25 | | | 3:15 | 48 | 22 | 3:03 | 17 |
| 5:13 | 42 | 75 | | | 3:49 | 44 | 9 | 3:32 | 25 |
| 5:14 | 42 | 37 | | | 3:50 | 48 | 50 | | |
| 5:21 | 48 | 62 | | | 3:51 | 48 | 32 | 4:07 | 20 |
| 5:25 | 44 | 32 | 5:23 | 11 | 4:44 | 44 | 49 | 4:32 | 14 |
| 5:26 | 48 | 25 | | | 4:46 | 48 | 31 | | |
| 5:56 | 42 | 9 | 5:56 | 8 | 5:15 | 42 | 50 | 5:15 | 30 |
| 5:57 | 48 | 9 | | | 5:16 | 48 | 54 | | |
| 6:22 | 42 | 0 | | | 5:37 | 48 | 35 | 5:43 | 10 |
| 6:24 | 44 | 21 | | | 5:55 | 48 | 56 | | |
| 6:25 | 48 | 4 | | | 6:05 | 44 | 18 | | |
| 6:54 | 44 | 28 | | | 6:23 | 48 | 35 | 6:21 | 25 |
| 6:55 | 48 | 7 | 7:06 | 9 | 6:46 | 44 | 3 | 6:43 | 18 |
| 7:27 | 48 | 10 | | | 6:49 | 48 | 41 | | |
| 7:41 | 48 | 38 | 7:47 | 12 | 7:41 | 44 | 12 | 7:33 | 11 |
| 8:15 | 48 | 7 | 8:25 | 3 | 7:43 | 48 | 45 | 7:37 | 4 |
| 9:15 | 48 | 11 | 8:44 | 7 | 8:45 | 44 | 34 | 8:30 | 22 |
| 9:42 | 48 | 28 | 9:18 | 3 | 8:47 | 48 | 44 | 8:45 | 20 |
| 9:47 | 48 | 2 | 9:35 | 7 | 9:13 | 48 | 27 | 9:10 | 18 |
| 10:16 | 48 | 11 | 9:45 | 9 | 9:43 | 44 | 22 | 9:35 | 5 |
| 10:46 | 48 | 2 | 10:25 | 5 | 9:44 | 48 | 30 | 10:05 | 15 |
| 11:16 | 48 | 7 | 10:45 | 14 | 10:10 | 48 | 20 | 10:30 | 5 |
| 12:20 A.M. | 48 | 0 | 11:40 | 3 | 11:16 | 48 | 44 | 10:40 | 5 |

We have selected the check made during the pre-holiday period in December because the cars were carrying extra loads at that time. The record shows that the company is

well supplied with equipment and that it has funds with which to supply more equipment as soon as it is required. During the year ending March 25, 1921, there were ten power interruptions from storms and all other causes, most of which were of less than an hour's duration. The actual count of carrying space provided and of passengers carried was made December 21, 22, 23 and 24, 1920, January 21 and 22, 1921, and April 15 to 21, inclusive, 1921.

It will be noted that on December 21, between 6:30 in the morning and midnight, forty-seven cars came into Aurora. They had a total seating capacity of 2212 and carried 1116 passengers. The first car that carried a standing load was at 3:18 P. M. It had three passengers more than it had seating capacity. At 5:13 P. M. a car with a seating capacity of 42 carried 75 passengers, but a minute later there was a car of the same capacity which carried only 37 passengers. During the thirteen minutes of the rush period from 5:13 P. M. to 5:26 P. M., five cars having a total seating capacity of 224 passed the Aurora city limits station carrying 231 passengers. Another check made shows that on the same day there passed the same station, north-bound, forty-three cars with a total seating capacity of 2020 and which carried 912 passengers. At 4:42 P. M. on this day a car with a seating capacity of 48 carried 64 passengers, but a minute later a car with a seating capacity of 42 passed the point without a single passenger, and in another minute another car of the same capacity passed the point carrying no passengers. To state these facts is to present an incontrovertible argument that the service is not inadequate. The company provided the cars, but the passengers insisted on riding on the first car because it would get them to their destination one or two minutes earlier. Employees of the company testified that when they told the passengers that extra cars were following, the passengers laughed at them and crowded onto the first car. On the same day the Smith Bus Line made twenty-eight south-bound trips and carried

past this station 220 passengers, and twenty-six north-bound trips carrying 241 passengers. These passengers could have been added to those carried by the traction line and the cars would not then have been loaded to capacity. [ The following is a total summary of the passengers carried by the two transportation systems during the four days before, Christmas, 1920:

| Date and direction | | Passengers in cars | Capacity of cars | Passengers in busses |
|---|---|---|---|---|
| December 21, | north | 912 | 2020 | 241 |
| | south | 1116 | 2212 | 220 |
| December 22, | north | 1031 | 1774 | 148 |
| | south | 1176 | 1866 | 194 |
| December 23, | north | 1006 | 2246 | 318 |
| | south | 1167 | 2090 | 245 |
| December 24, | north | 1125 | 2336 | 392 |
| | south | 1400 | 2700 | 309 |

The bus line owns and operates three busses and on the days enumerated was operating full capacity. Two of these busses have a seating capacity of 20 and one of them a seating capacity of 25. On several occasions it had in its busses from 25 to 35 passengers, which was as high as 15 beyond capacity.

It would unduly lengthen this opinion to analyze all of the figures shown by the many exhibits in this record, but it may be profitable to add this further detailed information: April 17, 1922, there were but two cars loaded beyond capacity which passed the asylum gate, at the south limits of Elgin. At 4:41 P. M. a car of 46 capacity carried 66 passengers, and at 5:13 P. M. a car of 48 capacity carried 76 passengers. By the time the first car reached South Elgin, four minutes later, it carried but 37 passengers, and when the second car reached Coleman, six minutes after it left Elgin, it had but 39 passengers. These figures serve to illustrate that the crowded condition of the cars is temporary, and tend to show that the service is unusually good rather than that it is inadequate.

The railroad company has assets valued at approximately $15,000,000 and a gross operating revenue of substantially $1,250,000 a year. Notwithstanding the fact that the railroad company operates through an unusually rich, heavily-populated section it is temporarily in the hands of a receiver. The total net assets of the Smith Bus Line are three busses purchased in the summer of 1920 at a total cost of about $10,000. It is safe to say that they are now worth less than one-third of that amount. The commission recognized the financial irresponsibility of the bus line and directed it to provide liability insurance to the amount of $10,000 for each bus. Passengers in a bus loaded fifty per cent beyond its capacity now have for their protection the privilege of trying to collect $10,000 from an insurance company. The public has nothing to assure them that the bus line will operate on regular schedule, and it requires no argument to demonstrate that it is incapable of furnishing adequate service to the inhabitants of the two smallest villages in the valley, much less to the 100,000 people living in and between Aurora and Elgin. One accident resulting in a serious injury or death of one person would be enough to wipe out the entire assets of the bus line. If one of the busses were taken out of service the bus line's ability to serve the public would be lessened one-third, and with three busses out of service the public would have no accommodation at all. The financial statement of the bus line shows that it is wholly incapable of supplying additional facilities, whereas the receiver for the traction line is financially able to provide additional equipment if the transportation needs of the territory demand it. The plan of the bus line is to start from the railroad terminals a few minutes ahead of the cars and to secure what business it can without trying to provide adequate service for the territory through which it operates.

The railroads in this country have kept pace with the industrial development and the population increase, and the prosperity of the nation has been due to a large extent to

the steady expansion of the transportation system. The savings of hundreds of thousands of investors have been massed to build our great network of railroads, and these transportation systems are entitled to protection from irresponsible competition. If shoestring transportation companies, with no money invested in right of way and no reserve capital to provide adequate service or to protect the public from damage, are permitted to drop in here and there and take the cream of the transportation business from the permanent transportation systems, disastrous results are inevitable. If the permanent highways built at the expense of the people are destroyed, these irresponsible bus lines, that profess to serve the public convenience and to supply public necessity, will leave the public to walk or to provide other transportation facilities. Orders of the public authorities to furnish adequate transportation facilities would be unavailing, because the bus lines would be wholly incapable of complying with the order.

The statute provides the means for compelling the existing transportation system to provide adequate service for the public. If the people living in the territory through which the Aurora, Elgin and Chicago railroad operates are not being properly served they can file a complaint with the Commerce Commission, which has the power to order whatever change or increase in service the evidence warrants. If the existing transportation company does not comply with the commission's order, then a situation may arise where the public convenience and necessity will require the establishment of another system. The theory of the Public Utilities act is to provide the public with efficient service at a reasonable rate by compelling an established carrier occupying a given field to provide adequate service and at the same time to protect the existing utility from ruinous competition. (*West Suburban Transportation Co. v. Chicago and West Towns Railway Co. ante,* p. 87.) By this method the public is protected from paying the cost of

the operation of competing systems and a return upon a double investment of capital. No doubt the proposed bus line would accommodate a few individuals in the Fox river valley, but the convenience and necessity which the law requires to support the commission's order is the convenience and necessity of the public as distinguished from that of an individual or any number of individuals. There is some evidence in this record which, if it stood uncontradicted, would support the order of the commission, but the evidence taken as a whole overwhelmingly preponderates against the order. Where it is found that the order of the commission is without substantial foundation in the evidence it is the duty of the courts to set it aside. *Commerce Com.* v. *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* (*ante*, p. 165.)

The circuit court erred in confirming the order of the Commerce Commission. Its judgment is therefore reversed and the order of the commission is set aside.

*Judgment reversed; order set aside.*