### Red Star Transportation Company v. Red Dot Coach Lines, et al.

(Decided June 7, 1927.)

Appeal from Franklin Circuit Court.

1. Carriers.—Acts 1926, c. 112, sections 1, 3, requiring motorbus line to obtain certificate of public necessity and convenience, held to require that proposed line be necessary and convenient, notwithstanding that words "necessary or convenient" appear in concluding part of section 3, since "or" in such phrase should be construed as "and."

2. Carriers.—Certificate of public necessity and convenience held properly refused to proposed bus line between Falmouth and Covington, in view of existing services, notwithstanding that proposed line would establish hourly schedule instead of existing two-hour schedule, since Acts 1926, c. 112, calls for public and not private convenience and authorized permit only where public is concerned.

3. Carriers.—Acts 1926, c. 112, section 4, providing that commissioner must refuse application of bus line for permit over route where two or more lines are already established unless existing operations are insufficient, held not direction to foster competition to extent of two companies.

4. Carriers.—State commissioner of motor transportation has wide discretion in granting permit to motorbus company to operate bus line over proposed route.

GUY A. HUGUELET and R. W. KEENON for appellant.

A. H. BARKER for appellee Red Dot Coach Lines.

BRADLEY & BRADLEY for appellee Kelley.

OPINION OF THE COURT BY JUDGE McCANDLESS—Affirming.

Pursuant to the provisions of chapter 112 of the Acts of the General Assembly of 1926, the Red Star Transportation Company applied to the state commissioner of motor transportation for a certificate of public necessity and convenience, to operate a motorbus line between Falmouth, in Pendleton county, and Covington, in Kenton county, via Greenwood, Butler, Grant's Lick, Clearyville, and Newport, Ky. It duly complied with the law authorizing such application and with the procedure relative thereto. At the hearing the Red Dot Coach Lines, another corporation, operating over the same road, appeared and protested.

Falmouth is a town of 1,100 people, situated 40 miles out of Covington on the LLL highway, running from Cincinnati to Lexington. It is also connected with Covongton by the route above described. Both traverse the same route from Falmouth to Greenwood from which point the LLL highway, the principal route, continues by the way of Grassy Creek, Fricksburg, and Independence, on the west side of the Licking river, while the Butler road branches off at Greenwood and parallels the former on the east side of the river, reaching Cincinnati via Newport and Covington. On the LLL highway, the Consolidated Coach corporation operates through service from Lexington to Cincinnati, making ten trips in each direction daily, with an hourly schedule. The Red Dot Coach Lines operates over that route from Falmouth to Cincinnati, making four trips in each direction daily. Over the Butler road the Red Dot Coach Lines now operates bus service from Falmouth to Cincinnati, making four trips in each direction daily. The Louisville & Nashville Railroad Company operates six passenger trains in each direction daily between Falmouth and Cincinnati, most of which trains stop at Butler.

Another bus line operates over a small part of the Butler road, branching off at Clearyville and running on to Covington, it further appearing that the section traversed by the Butler road is sparsely settled, Butler, the chief town, having only a few hundred inhabitants.

The commissioner found that between Falmouth and Covington the existing service is ample and adequate; that as to local travel along the route between the termini, the proposed additional service would be a convenience, but is not a necessity; that both necessity and convenience must concur to authorize such privilege, and therefore refused the permit. On appeal to the Franklin circuit court the same conclusion was reached and judgment entered in accordance therewith.

The Red Star Company appeals and urges that by the provisions of section 3 of the act an applicant is entitled to a permit, if it shows that the proposed privilege is either necessary *or convenient* to the public, and that the existing service is inadequate; that it did show such inconvenience and inadequacy, and was therefore entitled to the permit.

The act provides:

"The term 'certificate' means a certificate of public convenience and necessity authorized to be issued under the provisions of this act." Section 1.

"No corporation, person or firm shall hereafter engage in the transportation of persons for hire, by motor vehicles, on any public highway in this state between fixed termini or over a regular route, without having first obtained, as in this act provided, from the commissioner of motor transportation a certificate declaring that the public convenience *and* necessity require such operation. The commissioner shall have power to issue to any applicant a certificate of public convenience *and* necesstiy, or to refuse to issue the same, or to issue it for partial exercise only of the privileges sought, and may attach to the exercise of the rights given by such certificate, such terms and conditions as, in his judgment, the public convenience *and* necessity may require. No such certificate shall be issued by the commissioner until it shall be established to the satisfaction of the commissioner after proper investigation and hearing that the privilege so sought by the applicant is

necessary *or* convenient for the public, and that the service so proposed to be rendered by the applicant is not being adequately performed at the time of such application by any other person, firm or corporation. The burden of proof shall be on the applicant." Section 3. (Our italics.)

The words "necessary *or* convenient for the public," appear in the concluding part of section 3, but in three other places in that section the words "convenience and necessity" are used, and the same words are used in section 1 defining the word certificate. Evidently the Legislature did not intend a contradiction of terms, and if it used these words in their popular sense we are inclined to the opinion that the word "*or*," appearing in the last phrase, was intended for and should be construed as "*and*." James v. U. S. Fidelity & Guaranty Co., 133 Ky. 299, 117 S. W. 406; Orem v. Campbell, 175 Ky. 210, 194 S. W. 113; Brown v. Blackwell, 178 Ky. 797, 200 S. W. 13; Henderson v. Com., 185 Ky. 232, 215 S. W. 53; Com. v. Grinstead, 108 Ky. 59, 55 S. W. 720, 57 S. W. 471, 21 Ky. Law Rep. 1444, 22 Ky. Law Rep. 377; Sams v. Sams, 85 Ky. 400, 3 S. W. 593, 9 Ky. Law Rep. 24; Bird, etc. v. Board of Commissioners, 95 Ky. 195, 24 S. W. 118, 15 Ky. Law Rep. 578; 2 C. J. p. 1338; Sutherland on Statutory Construction, section 397.

However, in statutes applying to public utilities the words convenience and necessity are used in a relative sense, and it is a matter of small import which conjunction is used. If additional service is a public necessity, relief from such necessity is a convenience. Conversely, if reasonably adequate public conveniences exist, there is no necessity for relief. Mere conveniences or even luxuries may develop into necessities. For example, waterworks, electric lights, and telephone service; and it has been said that "any improvement which is highly important to the public convenience and desirable for the public welfare may be regarded as necessary, if it is of sufficient importance to warrant the expense of making, it is a public necessity." Wabash, C. & W. R. R. Co. v Commerce Commission, 309 Ill. 418, 141 N. E. 214. Anything which is expedient is a necessity. Warden v. M. H. & H. E. R. R. Co., 128 Ky. 563, 108 S. W. 880, 33 Ky. Law Rep. 38. Inconvenience may be so great as to amount to necessity. Lawton v.

Rivers, 2 McCord (S. C.) 445, 13 Am. Dec. 741. A strong, urgent reason why a thing should be done creates a necessity for doing it. Todd v. Flournoy Heirs, 56 Ala. 99, 28 Am. Rep. 758.

Applying the above definitions to the facts of this case, it is clear that there are ample facilities and conveniences for all through travel, and no lack of facilities. for local travel. If the proposed route is established, there will be an hourly bus schedule each way over the Butler road instead of a two-hour schedule as now exists, and this will be an added convenience to some of the patrons living along the route. This is not sufficient. The statute calls for a *public* not a *private* convenience. It authorizes a permit only where the public is concerned; this cannot be granted for the convenience of one or more individuals, and the commissioner properly so held. See State Public Utilities Commission v. Toledo, St. Louis & W. Ry. Co., 286 Ill. 582, 122 N. E. 158; Choate v. Illinois Com. Commission, 309 Ill. 248, 141 N. E. 12; West Suburban Transportation Co. v. Chicago & W. T. Ry. Co., 309 Ill. 87, 140 N. E. 56.

It is next urged that by section 4 of the act the Legislature intended for the commissioner to grant permits to as many as two transportation companies upon each route. That section reads:

"It shall be the duty of the commissioner to refuse any application for a permit over a route where there has already been two or more lines established unless it can be shown to the satisfaction of the commissioner that the existing operations are not sufficient to take care of the traveling public and the persons holding said certificates refuse to put on sufficient service to take care of said traveling public."

This section is a limitation upon the number of companies entitled to permits. Instead of directing the commissioner to foster competition to the extent of two rival companies, it restricts competition to two companies in all cases unless it is shown that the existing operations are insufficient to take care of the traveling public and the companies having permits refuse to furnish adequate facilities for that purpose. Aside from the plain language of this provision, appellant's contention is not in line with the spirit of the act. The state highways had been constructed and were being main-

tained at great expense to the state. Travel was rendered hazardous, and the roads were in fair way to be destroyed by the indiscriminate use of heavy motorbusses. At the same time, it was recognized that bus service is a convenience and may be a necessity to the traveling public. This act was passed to preserve the roads, lessen the hazards of travel upon them, and as far as practicable to furnish reasonable transportation facilities. The roads are preserved by preventing their unnecessary use and by collecting a reasonable compensation for their use from those who are permitted such privilege. Travel is rendered less hazardous by the regulation of those having permits. Public service and the proper maintenance of the highways do not require the use of more busses than are sufficient to supply reasonably adequate service. Such service depends on the transportation companies making reasonable returns on their investment, and, as the rates charged must be approved by the commissioner, they can be properly regulated.

Unlimited competition would not only divide patronage, but have a tendency to lower rates to a point at which all would lose money and result in a survival of the fittest, or in the bankruptcy of all to the injury and detriment of the service, hence a wide discretion is vested in the commissioner, who is required, before granting a permit, to consider not only the public necessity and convenience of the proposed route, but also the character of existing service and the rights of others already engaged. For this purpose the applicant for a permit must give notice to holders of similar permits over the route proposed, and also to steam railways operating between the same points. The commissioner hears all parties interested, and the permit will not be granted unless necessity and convenience, as above defined, require it and the existing service is shown to be inadequate. Such being the spirit of the act, it is clear that section 4 was intended as a limitation and not as a direction for competition.

Wherefore, perceiving no error, the judgment is affirmed.