**C. & D. MOTOR DELIVERY CO. et al.
v. SCHRODER et al.**

Court of Appeals of Kentucky.
March 20, 1951.

Rehearing Denied Oct. 12, 1951.

Harry McChesney, Jr., McChesney & McChesney and Robert H. Kinker, all of Frankfort, for appellants.

Blakely, Moore & Blakely, Marion W. Moore, Covington, for appellees.

VAN SANT, Commissioner.

The appeal is from a judgment of the Franklin Circuit Court confirming the action of the Department of Motor Transportation in issuing to appellee, Paul Schroder, dba, Schroder's Express, a certificate of convenience and necessity to operate an intrastate motor truck line, as a common carrier, between Newport and Louisville with service at various and sundry intermediate points. The sole ground relied on for reversal is that the evidence is not sufficient to support the finding of the existence of public convenience and necessity for the service authorized.

The certificate was issued to appellee and the appeal was filed in the Franklin Circuit Court previous to the enactment of the present Motor Carrier Act. In our review of the proceedings before the Division (now Department) of Motor Transportation, we are controlled by KRS 281.420, 1948 Edition, which now has been repealed but substantially re-enacted and compiled in KRS 281.785, 1950 Supp. That section, insofar as pertinent, reads:

"281.420(2) * * * its (the circuit court's) review being limited to determining whether or not the division acted without or in excess of its power, the order was procured by fraud, the order is in conformity to the provisions of this chapter, and the finding of facts in issue is supported by any substantial evidence.

\* \* \* \* \* \*

"(5) Any party may appeal from the circuit court to the Court of Appeals, * * *."

In Red Star Transp. Co. v. Red Dot Coach Lines, 220 Ky. 424, 295 S.W. 419, 420, the court defined the meaning of the phrase public convenience and necessity and said: "If additional service is a public necessity, relief from such necessity is a convenience. Conversely, if reasonably adequate public convenience exist, there is no necessity for relief."

The court further said: "But if the proposed route is established, there will be an hourly bus schedule each way over the Butler road instead of a two-hour schedule as now exists, and this will be an added convenience to some of the patrons living along the route. This is not sufficient. The statute calls for a *public* not a *private* convenience, and authorizes a permit only where the public is concerned, and this cannot be granted for the convenience of one or more individuals, and the commissioner properly so held."

At the close of the opinion the court observed: "The commissioner hears all parties interested, and the permit will not be granted unless necessity and convenience, as above defined, require it and the existing service is shown to be inadequate."

The decision in that case was approved in Cooper v. McWilliams & Robinson, 221 Ky. 320, 298 S.W. 961 and Barnes v. Consolidated Coach Corporation, 223 Ky. 465, 3 S.W.2d 1087, 1088. The opinion in the case last cited recites: " 'it does not seem that further permits should be issued merely because certain persons may think it would be more convenient.' "

In Whitney v. Newbold, 270 Ky. 209, 109 S.W.2d 406, portions of which are relied on by both parties, the court reviewed the evidence in a summary manner. It was shown by the applicant that there was a widespread desire among businessmen and firms in Owensboro for the additional truck service and numerous witnesses stated that additional service was necessary to meet the needs of shippers and receivers of freight at Owensboro. Other witnesses stated that competition would render better service. Still others testified to delays on the part of the company rendering the service inadequate at the time of the application,

most of which related to isolated instances and did not indicate habitual or continued neglect of any shipper. On behalf of the then holder of a certificate it was shown that railroads, express companies, and truck lines operating over other routes furnished facilities for shippers; and that other bus companies carried light express between the terminal points of the authority applied for. That such carriers had ample facilities to take care of all the business and that they were willing to increase their facilities to meet any growing demand. The court held that there was sufficient evidence to support the commissioner's finding that public convenience and necessity did not demand the additional service, although the writer of the opinion indicated that the proof was sufficient to support the commissioner had he determined otherwise.

■ To determine whether the evidence was sufficiently substantial to uphold the decision of the department in this case, we must look to the evidence offered in support of the application and the uncontradicted evidence offered by the protestants.

Sixteen carriers presently serve the territory under certificates of public convenience and necessity issued by the Department.

James M. Ward, Jr., manager of the Newport Steel Corporation, testified to the needs of his company to facilitate shipments over all territory embraced in the United States. He did not testify as to the amount of freight he shipped or would ship to Louisville or any other point named in the certificate applied for, but he stated that he *felt* there was a need for additional intrastate service between Louisville and the Covington—Newport area. This statement seems to have been based on anticipation of the needs of a new plant his company had recently constructed at Wilders, Kentucky. He stated that he sells pipe to the Commonwealth and to various contractors and that he has had some difficulty getting immediate delivery of this commodity; however, he testified that the policy of his company was "to get as many carriers as possible and to equitably divide the tonnage." He was asked if the Huey Motor Company (one of the protestants), within the last year, had

ever failed or refused to furnish all the equipment his company needed for shipping over the route applied for. His answer to that question and his testimony in respect to "the policy of his company" refute the existence of the condition he was introduced to establish. The answer is in the following words: "They have never refused. We could report it to the Department of Motor Transportation and they would revoke their permit; if they refuse service we would have the right to demand someone else that would provide service, because it is for public convenience and necessity."

We have found nothing in Mr. Ward's testimony which could be considered substantial evidence showing either inadequacy of present service or the need of additional service. The testimony of this witness shows merely that added service would be ideal and would permit his firm to pursue its policy "to get as many carriers as possible and to equitably divide the tonnage."

Charles Vogel testified that he is traffic manager for Grote Manufacturing Company of Bellevue, Kentucky, which manufactures bathroom medicine cabinets, street and road signs, and automobile lamps and reflectors. He stated that the present service is entirely satisfactory but "A. Of course we want the benefit of the intrastate rates, the intrastate service.

"Q. Would it get it there any faster than the following morning? A. I don't know that it would, no.

"Q. What change, if any, would there be in the hour of delivery in Louisville through the granting of this application as compared to the service Schroder now gives? A. There would not be any better service. As I say, we would like intrastate service for the benefit of the rates."

In speaking of the service rendered by C. & D. Motor Delivery Company, one of the protestants, Mr. Vogel was asked the following questions and made the following answers:

"Q. Have you ever asked C. & D. whether they would give same day pickups on shipments to Louisville? A. We

have had trouble in the past getting pickups.

"Q. Have you had any trouble in the past year? A. Yes, sir.

"Q. In recent months has there been any recent arrangement made with C. & D. to pick up at your place scheduled pickups? A. Yes, they had their own pickup.

"Q. Don't they call at your dock every day, whether they make delivery every day, to see if you have any going in? A. If we have freight ready they take it in, if not—

"Q. Don't they take a truck every day: A. Our freight isn't ready the same time every day. If he gets there before the freight is ready it lays over.

"Q. Have you ever told him any particular hour you prefer they come to your dock, any preference? A. Yes.

"Q. Didn't they comply with your wishes? A. Yes, sir."

When asked what information he had about present available service he stated that he was too busy to go around soliciting truck lines. This witness does not even testify that additional service would be of greater private convenience to his firm, although it would receive some, though meager, financial comfort from a reduction in rates. This reduction already is available, if he should see fit to use the facilities of one of the present holders of certificates, whose services he admits are now satisfactory.

Joe H. Wallingford, treasurer of the Vertner Smith Company, Wholesale Liquor Dealers of Louisville, was introduced by the applicant. He testified solely to his own company's requirements and conveniences. He stated that his firm made no direct shipments on the route applied for, except in the metropolitan area of Covington and Newport, and which shipments are being handled by the applicant under an interstate permit through the State of Indiana, into Cincinnati, thence to Newport. He was asked if he had need for intermediate service. He made the following answer: "A. Well, we need good service. We are interested primarily in the service

that is faster, carefully handled, the merchandise is carefully handled, and that the shipper will pay off all C.O.D. shipments, because all merchandise has to go C.O.D.

"Q. Has that been handled satisfactory by Schroder? A. We have been satisfied.

"Q. Would shipments be any quicker going through Kentucky than through Indiana and Ohio? (The Indiana and Ohio route is twenty-eight miles farther than the Kentucky route) A. Well, I don't know whether it would be or not. We assume a more direct route would be quicker.".

He was asked the following questions and made the following answers:

"Q. The present service is entirely satisfactory? A. Yes.

"Q. That only leaves, so the thing you are here for, which is a cheaper rate? A. We would like to have anything hauled cheaper.

"Q. Do any other motor carriers call on you in Louisville soliciting your business? A. Yes they do, quite a number.

"Q. Has Ecklar-Moore Express of Cynthiana (one of the protestants) ever solicited your business? A. Ecklar-Moore hauls a great deal of merchandise for us in those towns that Schroder can't serve.

"Q. Do they settle their C.O.D.'s all right with you? A. We are very well satisfied."

He further testified that Huey, Hay (another protestant), C. & D., and Doyle had solicited his business. We are of the opinion that the testimony of this witness shows a natural desire for additional profits, but that it refutes the contention that the present service is inadequate or that there is need for additional service.

The only other evidence introduced by the applicant was the testimony of two of its own employees. They testified as to the applicant's ability to render any service required, and they intimated they considered present service inadequate because several shippers had requested them to apply for a permit although such shippers, in turn, gave no reason for such request.

On the other hand, several of the protestants testified as to their ability to handle the present service and the fact that an additional competitor would reduce their income. Their testimony shows that they are ready, willing, and able to render any required service, and that they are satisfactorily rendering service to meet the required needs of all shippers in the territory.

We have found no substantial evidence of inadequacy of present service or the existence of a demand for additional service based on public convenience and necessity. Accordingly, we are of the opinion that the Department erred in issuing the certificate and that the circuit court erred in confirming the action of the Department.

The judgment is reversed with directions that the cause be remanded to the Department of Motor Transportation for proceedings consistent with this opinion.