[Civil No. 3219.   Filed November 23, 1932.]

[16 Pac. (2d) 420.]

CORPORATION COMMISSION OF THE STATE OF ARIZONA and AMOS A. BETTS, CHARLES R. HOWE and LOREN VAUGHN, as Members of the Corporation Commission of the State of Arizona, Appellants, v. PEOPLES FREIGHT LINE, INC., a Corporation, Appellee.

Mr. K. Berry Peterson, Attorney General, Mr. Charles L. Strouss, Assistant Attorney General, and Mr. Linus R. Fike, for Appellants.

Messrs. Sloan, McKesson & Scott, for Appellee.

LOCKWOOD, J.—This is an action brought in the superior court of Maricopa county to vacate an order of the corporation commission granting a certificate of convenience and necessity for the operation of a motor vehicle freight line between Phoenix and Tucson to the Tarbell Transfer Company, a copartnership. The plaintiff is the Peoples Freight Line, Inc., which at the time of the hearing of the application before the commission was already operating such a line over that route, and which appeared and protested against the application. The case was heard before the trial court sitting without a jury, and findings of fact were made to the effect that the Peoples Freight Line, Inc., was already rendering full, adequate, and satisfactory service at the time of the application of the Tarbell Transfer Company as aforesaid, and that the public convenience and necessity did not require the issuance of a certificate to the latter. As a conclusion of law from such findings the court held that the order of the commission granting the certificate to the Tarbell Transfer Company was unreasonable, and the judgment vacated and set it aside. From this judgment the commission has appealed.

In order to operate a motor vehicle as a common carrier for hire within the state of Arizona, it is necessary that the operator first secure from the corporation commission a certificate of necessity and

convenience. *Northeast Rapid Transit Co.*, v. *City of Phoenix, ante,* p. 71, 15 Pac. (2d) 951 (just decided). Section 736, Rev. Code 1928. The section last cited lays down the principle which shall govern the commission in the issuance of such certificate in the following language:

" . . . No certificate shall issue until the commission finds that the public convenience and necessity requires it. . . . "

The decision of the commission on this point, however, is not final, for section 720, Revised Code 1928, reads in part as follows:

" . . . Any party in interest, or the attorney general on behalf of the state, being dissatisfied with any order or decision of the commission, may within thirty days after a rehearing is denied or granted, and not afterwards, commence an action in the superior court of the county in which the commission has its domicile, against the commission as defendant, to vacate and set aside any such order or decision on the ground that . . . such order or decision is unlawful, or that any regulation, practice, act or service fixed in such order is unreasonable, . . . The trial shall conform, as near as may and except as herein otherwise prescribed, to other trials in civil actions. Judgment shall be rendered affirming, modifying, or setting aside such original or amended order. Either party to said action, or the attorney general on behalf of the state, within thirty days after the rendition of the judgment of the superior court, may appeal to the supreme court. In all trials, actions and proceedings the burden of proof shall be upon the party adverse to the commission or seeking to vacate or set aside any determination or order of the commission to show by clear and satisfactory evidence that the same is unreasonable or unlawful."

It will be seen, upon examining the language of this section, that the proceeding is not an appeal from the decision of the commission, but it is a new

and independent action. The case is heard *de novo* upon such evidence as may be proper, and not merely upon a review of the evidence taken before the commission. Such being the case, the trial court is not bound by the rule followed on an appeal by this and by most appellate courts to the effect that, if any reasonable evidence sustains the order of a lower tribunal, an appellate court will not consider and review the weight of the evidence, or the inferences drawn therefrom by the trial court. The superior court in this proceeding had the right to form its own judgment as an independent tribunal as to the conclusion to be drawn from the evidence, subject only to the rule laid down in section 720, *supra,* that the burden of proof is on the plaintiff to show by clear and satisfactory evidence that the order of the commission is unreasonable or unlawful.

There are some states, it is true, which hold that a trial court reviewing the action of a commission authorized to regulate public service companies is bound by the rule which we have referred to above as being followed by us in appeals, but it will be found upon examination of the cases cited by defendant to this effect that the proceedings involved were in the nature of appeals rather than trials *de novo. Florida Motor Lines* v. *State Railroad Commission,* 101 Fla. 1018, 132 South. 851; *Interstate Commerce Commisssion* v. *Union Pac. R. R. Co.,* 222 U. S. 541, 32 Sup. Ct. Rep. 108, 56 L. Ed. 308; *Tagg Brothers* v. *United States,* 280 U. S. 420, 50 Sup. Ct. Rep. 220, 74 L. Ed. 524; *People of the State of New York* v. *McCall,* 245 U. S. 345, 38 Sup. Ct. Rep. 122, 62 L. Ed. 337.

This disposes of the first assignment of error to the effect that the trial court erred in giving judgment for plaintiff because the order of the commission was supported by substantial evidence.

We consider next whether the order of the superior court setting aside the order of the commission was supported by substantial evidence. Since the proceeding before us is an appeal, and not a trial *de novo,* we must assume the decision of the superior court to be correct if there is any reasonable evidence in the record to sustain it. Plaintiff urges that we are foreclosed from considering this question for the reason that the reporter's transcript of the testimony taken at the trial in the superior court has been stricken from the record, and that in such circumstances we will not consider an assignment to the effect that the evidence does not sustain the judgment. *In re Scott,* 21 Ariz. 332, 188 Pac. 260; *Lesueur* v. *Backstein,* 27 Ariz. 566, 233 Pac. 1050; *Daze* v. *Ketchum,* 18 Ariz. 31, 155 Pac. 964; *Ensign* v. *Koyk,* 31 Ariz. 1, 250 Pac. 246.

Defendant, admitting the general rule, contends that it appears from the record herein that the testimony contained in the reporter's transcript is of no importance, and that the case was really determined solely on a certain exhibit which is a part of the record, notwithstanding that the transcript has been stricken, and we can therefore consider this assignment of error on the record. It appears from the minutes of the trial court that plaintiff offered the oral testimony of Amos A. Betts, which, of course, is found only in the stricken transcript, and then rested. Defendant thereupon offered Exhibit 1 and also rested. Strictly speaking, therefore, we have in the record only defendant's evidence, with plaintiff's entirely lacking, and nothing legally before us from which we can determine how much or how little probative value the evidence contained in the missing transcript has. Under such circumstances we might well apply our rule above referred to and affirm the judgment on the ground that the entire evidence is not before us.

But even accepting the statement of defendant that the missing transcript contains no evidence material to the issues of the case, and that it was determined on Defendant's Exhibit 1 alone, can we say the judgment of the trial court is not sustained by that? The exhibit in question consists of a complete record of the proceedings before the corporation commission in support of and in opposition to the application of the Tarbell Transfer Company for the certificate of necessity and convenience which was issued by the commission and afterwards annulled by the judgment of the court.

It appears from that record that the Tarbell Transfer Company offered in support of its contention that public convenience and necessity required the issuance of the certificate a large number of letters and several petitions from prospective shippers of freight along the proposed line, together with the oral testimony of a number of witnesses. These letters are practically identical in substance and are to the effect that the Tarbell Freight Company has always rendered very satisfactory trucking service wherever it has done business in the past, and that the signers of the letters would be glad to have the certificate issued so that they could patronize such transfer company for their convenience and necessity. None of these letters criticised the service being rendered by plaintiff in any manner. The testimony of the witnesses supporting the petitions went more into detail, but each of them, when asked as to whether they had any complaint to make of the service being rendered by plaintiff, said that they had no criticism thereof.

Plaintiff, on the other hand, presented a large number of letters and petitions to the effect that the existing service was entirely satisfactory, that there was no necessity for another one, and that no public convenience would be served by any additional

competition in the field. From the evidence submitted to the corporation commission, we are satisfied that the only reasonable conclusion to be drawn therefrom was that the existing service rendered by the plaintiff was complete, adequate and satisfactory in every respect, and that no prospective or actual shippers had any complaint to make of the cost or character of such service, but that a large number of shippers, from their past personal and business relations with the Tarbell Transfer Company, would be glad to patronize it in place of plaintiff should a second certificate be granted.

On this state of facts was it unreasonable for the commission to find as a matter of law that public convenience and necessity required the issuance of a second certificate? The answer to that question will depend upon our decision as to what the public policy of the state of Arizona, as laid down in section 736, *supra,* is in regard to common carriers by motor vehicles.

It is agreed by all authorities in modern times that common carriers are subject to reasonable regulation by the state, and that such regulation should be exercised so as to promote public necessity and convenience, the rights of the public being paramount to those of the carrier. There are, however, two widely different theories more or less prevalent as to how this public convenience can best be served. The one holds that it is by restricted competition, and the other that it is by regulated monopoly.

In the past the generally prevailing impression among both legislators and courts was that free competition was a legitimate and proper, and, indeed, the best means of protecting the interest of the public and promoting the general welfare in respect to service by common carriers and public utility corporations. That this system worked fairly well when carriers were few and transportation needs small

may be admitted, but as business became more complex and the services rendered by common carriers more and more vitally necessary to modern civilization, history and experience both clearly demonstrated that public convenience and necessity are not furthered in most cases by the maintenance and operation of a number of competing plants or systems of the same character to supply a locality, but that they are generally far better served in the long run by the maintenance only of the smallest number of such instrumentalities which will adequately serve the public needs. Many years of bitter experience have proved beyond a doubt in every line of public service, including that of carriers, that if more than one instrumentality is allowed to operate when one is amply sufficient to meet the public needs, the actual cost to the public in the long run is not only as a rule greater than it would be with but one plant, but the service is also less satisfactory. Past history has shown that in public service enterprises competition in the end injures rather than helps the general good and that whether in public or private hands, such utilities are best conducted under a system of legalized and regulated monopoly.

The popular mind has been so long impregnated with the idea that competition is the only relief against oppression that it is difficult for the people to understand, without careful consideration, that oppression may be best prevented or removed by fair and just regulation of a monopoly, and where a utility company has had no competition and a duplicate plant is proposed, it is but natural for the public to expect lower rates and better service, and encourage the duplication. As a matter of fact, however, competition among the great public service corporations is an iridescent dream, for by contract, by combination, or consolidation eventually a monopoly is established, and in the long run such dupli-

cation must be and is paid for by the community, either in higher rates or poorer service, while if a public utilities commission has the power to allow a monopoly with regulated rates and conditions of service, both for the corporation and the consumer, from the beginning, it will be in the end better for the public than cutthroat competition.

The various public utility acts which have been passed of recent years have therefore generally declared either in precise language or implied in effect that it is not ordinarily for the general welfare to permit such corporations to compete with each other unless the circumstances show clearly that it is necessary to protect the interests of the public.

The construction of these acts has been before the courts in many of the states, and almost invariably the answer has been that the method provided therein by which the end sought by the public utility acts, to wit, the public necessity and convenience, is to be reached, is regulated monopoly rather than the competitive system. *New York Cent. R. Co.* v. *Public Utilities Commission,* 123 Ohio St. 370, 175 N. E. 596; *State Public Utilities Commission* v. *Toledo, St. L. & W. R. Co.,* 286 Ill. 582, 122 N. E. 158; *West Suburban Transp. Co.* v. *Chicago & W. T. R. Co.,* 309 Ill. 87, 140 N. E. 56; *Davis & Banker, Inc.,* v. *Nickell et al.,* 126 Wash. 421, 218 Pac. 198; *Red Star Transp. Co.* v. *Red Dot Coach Lines et al.,* 220 Ky. 424, 295 S. W. 419; *Idaho Power & Light Co.* v. *Blomquist et al.,* 26 Idaho 222, 141 Pac. 1083, Ann. Cas. 1916E 282.

We think, therefore, on both reason and authority, that our act should be interpreted in harmony with similar acts from other states, and that its language, spirit, and the purpose back of it shows it to be the opinion of our legislature that the best method by which public convenience and necessity can be served in the case of common carriers by motor vehicles is

regulated monopoly, and that competition should be allowed only when it appears that regulation of the monopoly is insufficient to provide proper service at a reasonable price.

Such being the rule by which the corporation commission must be guided, and it appearing affirmatively from defendant's own evidence that the plaintiff's already existing service was ample in quantity, satisfactory in character, and reasonable in price, it follows that it would be an abuse of discretion and unreasonable, so long as such conditions existed, to authorize a competing company to carry on business as provided by the certificate issued.

The superior court on the record as made rightly vacated the order of the corporation commission, and its judgment is affirmed.

McALISTER, C. J., and ROSS, J., concur.