**265 P.2d 773**

**CITY OF TUCSON et al.**

v.

**POLAR WATER CO.**

No. 5607.

Supreme Court of Arizona.

Jan. 18, 1954.

406

Harry L. Buchanan, City Atty., Tucson, J. Luther Davis and F. Dale Healy, Assts. City Atty., Tucson, for appellants.

Knapp, Boyle, Bilby & Thompson, Tucson, by B. G. Thompson, Tucson, for appellee.

Clifford R. McFall, Tucson; Jennings, Strouss, Salmon & Trask, Phoenix, by Irving A. Jennings; A. B. Spector, Phoenix; Snell & Wilmer, Phoenix, by Mark Wilmer and Perry Ling, Phoenix; Wm. C. Eliot, City Atty., and Arthur B. Parsons, Jr., Asst. City Atty., Phoenix, amici curiae.

WINDES, Justice.

For the facts reference is made to the former opinion, 76 Ariz. 126, 259 P.2d 561.

From a consideration of the motion for rehearing, we find some confusion in the minds of counsel for plaintiff and amici curiae concerning the effect of the original opinion, and while we do not depart from the ultimate conclusion reached therein, we do feel that some clarification and modification of the reason for such conclusion are warranted.

We held that section 16–604, A.C. A.1939, has no application to the fact situation here presented where a municipality merely expands its territory and encroaches upon an existing utility. Many constitutional questions are raised, but we are not called upon to say whether if the facts fitted the statute, it would or would not be constitutional. We do say, however, that to adopt the construction contended for by defendant would possibly render it vulnerable to constitutional attack. Under defendant's proposed construction, the statute might well operate to require a municipality, when enlarging its boundaries, to pay far in excess of the actual damages resulting from such expansion and competitive service. Without deciding this question, there is good authority to the effect that the legislature may not require a municipality to expend its funds for the pay-

ment of damages in excess of those actually sustained resulting from its exercise of the right of eminent domain, 18 Am.Jur., Eminent Domain, section 10. This statute, under plaintiff's suggested construction, might well operate to require a city to purchase property wholly outside its limits for which it would have no use unless it assumed the responsibility of operating the plant and serving the territory then being served by the existing utility. Under plaintiff's proposed construction, in the event the city should annex two blocks it could be required to purchase the entire plant of the utility. This would be true unless you construe the "property and plant" which the city is required to purchase to mean "that portion of the property and plant located only within the territory annexed to the city". We believe any such possible results or confusion was never intended by the legislature in passing section 16–604, supra. We are entirely satisfied with our former conclusion that this section cannot be used for the purpose here attempted.

We held in the former opinion that section 16–604, supra, was a law relating to cities and under the provisions of section 16–303, A.C.A.1939, conflicting charter provisions of the defendant city prevailed. To this extent we believe we erred. Under the provisions of section 2, article 13 of the Arizona constitution, a municipality may adopt a charter only for its own government and consistent with the constitution and the laws of the state. Charter powers under its charter are necessarily limited to matters concerning its own government. This was clearly announced in Clayton v. State, 38 Ariz. 135, 297 P. 1037, 1041, in the following language:

"The general powers conferred on the city by the freeholders' charter are those concerning municipal or local affairs. * * * The city does not assume under its charter all the powers that the state may exercise within its limits, but only powers incident to a city government. 'Rightful subjects' of legislation thereunder are therefore local or municipal concerns of the city. Under this grant of power the city cannot enter the field of general legislation, but must confine itself to the making of by-laws for its local government. In the latter field, under the Constitution so long as the legislation is in harmony with that instrument and the laws of the state it is valid and, under the provisions of section 398, Revised Code of 1928 (section 16–303, A.C.A.1939), prevails over state legislation conflicting therewith. * * *"

Section 16–604, supra, says in effect that if a municipal corporation desires to serve itself and its citizens when they are already being served by a public utility, it must purchase and take over the property and plant of such utility and pay the fair value thereof within eighteen months, such value

to be measured by the compensation required under our condemnation or eminent domain statutes. In event such fair value cannot be determined by agreement or arbitration, it shall be determined by a suit under the provisions of said eminent domain statutes. Clearly, this section is in the nature of an eminent domain statute, and clearly, the city in exercising the right of eminent domain is acting as an agent of the state and beyond the boundaries of a matter in which only its citizens are concerned. It cannot be that each charter government can prescribe the conditions under which it would damage or possibly destroy such property rights. There must be one state-wide rule upon such matters. The entire state and especially all the public utilities of the state are vitally interested in the conditions and laws under which private property is taken or damaged for public use, and a city under charter government has no power to dictate such conditions or enact such laws. Section 16–303 can have no influence upon the matter; it cannot operate to give the city any such power when the legislature has spoken upon the subject. Section 16–604 is of state-wide concern and would necessarily prevail and take precedence over any provisions of a city charter in conflict therewith.

██ Defendant says its constitutional right to operate its own water system carries the right to compete with an existing utility free of legislative control or restraint. Since the original opinion apparently created the impression in the minds of some counsel that we held in effect that the legislature was powerless to impose any restraint upon or in any manner control the city in this respect, we deem it necessary to clarify this matter. The city has its right or franchise in the form of a constitutional grant; the plaintiff has its right or franchise in the form of a certificate of convenience and necessity issued by the Arizona Corporation Commission. This court has held in effect that in the absence of legislation a municipality may operate a public utility under its constitutional grant in competition with a private utility operating under a certificate of convenience and necessity. Menderson v. City of Phoenix, 51 Ariz. 280, 76 P.2d 321. Therein the court held that any power of regulation concerning competition rested with the legislature if anywhere. While we shall not attempt to define the limits of the regulatory power of the legislature, we do say that merely because the constitution gives municipalities the right to engage in a utility business, it does not mean that the legislature is thereby stripped of its power to protect the franchises lawfully issued by the state and the businesses operated thereunder from damage or destruction caused by the activities of the municipality under its power of operation. There is no constitutional basis for saying that the legislature may not require its municipalities to pay just compensation for the damage or destruction of the business, franchise, or

property of lawfully operating private utilities, even though such damage or destruction results from competition. By the issuance of its certificate of convenience and necessity, the state contracts in effect that if the certificate holder will make adequate investment and render competent and adequate service, he may have the privilege of a monopoly as against any other private utility. Certainly the state has the power by legislative act to protect the integrity of such a contract and the investments made upon the faith thereof against damage or destruction by the activities of one of its municipalities. That such activities spring from constitutional authority does not destroy this power. In the absence of such legislation, however, competition by a municipality within the boundaries of the city is without restraint, Menderson v. City of Phoenix, supra, and harm or loss resulting therefrom would be without breach of duty or damnum absque injuria.

On the question of the power of the legislature, the court is criticized for citing the case of City of Tombstone v. Macia, 30 Ariz. 218, 245 P. 677, 46 A.L.R. 828, as authority for the proposition that the legislature could in no way modify the grant to municipalities to engage in any kind of business. There is merit to this criticism. What that case is authority for is that since article 2, section 34 of the Arizona constitution granted to municipalities the right to engage in industrial pursuits, the legislature could not prescribe the form of such pursuits. This is good law but not controlling herein.

We adhere to our former conclusion and the principles therein announced except as herein modified.

STANFORD, LA PRADE and UDALL, JJ., concur.

PHELPS, Chief Justice (specially concurring in part and dissenting in part).

I adhere to the principles of law set forth in the original opinion in this case and therefore concur with the majority opinion on the motion for rehearing insofar as it reaffirms that opinion. I am still of the view that section 16–604, A.C.A.1939, is not only a law relating to cities but it is a law undertaking to impose a burden upon a city acting in its proprietary capacity the character of which it is without power to impose. We said in Luhrs v. City of Phoenix, 52 Ariz. 438, 83 P.2d 283, that if the activity of a city is carried on as an agent of the state (i. e., in its governmental capacity), it is of general or public concern. If it is exercised by the city in its proprietary capacity it is a power incidental to home rule. It was upon this basis that the original opinion held that section 16–604, supra, conflicted with section 16–303, A.C.A.1939, and therefore must fall.

I did not say in the original opinion that the legislature is without power to exercise proper control over a public utility op-

erated by a municipality and I do not believe that any logical inference to that effect can be drawn from the language used therein.

It was the law in England and became a part of the common law of this country that when private property *is affected with a public interest* as is the property of a public utility, that it is subject to such regulation as the body politic may impose from time to time for the protection of the people and the promotion of the general welfare. These principles were clearly denounced in Munn v. Illinois, 94 U.S. 113, 24 L.Ed. 77. Chief Justice Waite there said:.

"* * * Property does become clothed with a public interest when used in a manner to make it of public consequence, and affect the community at large. When, therefore, one devotes his property to a use in which the public has an interest, he, in effect, *grants to the public an interest in that use, and must submit to be controlled by the public for the common good, to the extent of the interest he has thus created.* * * *" (Emphasis supplied.)

Lord Hale said in his treatise De Jure Maris, 1 Harg L.Tr. 6:

"The King has a right of franchise or privilege, that no man may set up a common ferry for all passengers, without a prescription time out of mind, or a charter from the King. * * This privilege or prerogative of the King, who in this connection only represents and gives another name to the body politic, is not primarily for his profit, but for the protection of the people and the promotion of the general welfare."

It will be seen that the power of the legislature is regulatory in character primarily for the protection of the public and not for the profit of the owner of the property affected with a public interest.

The very foundation upon which the system of legalized and regulated monopoly rests in this state is the convenience and necessity of the public. Judge Lockwood said in Corporation Commission v. People's Freight Line, Inc., 41 Ariz. 158, 16 P.2d 420, 422, that:

"* * * history and experience both clearly demonstrated that public convenience and necessity are not furthered in most cases by the maintenance and operation of a number of competing plants or systems of the same character to supply a locality, but that they are generally far better served in the long run by the maintenance only of the smallest number of such instrumentalities which will adequately serve the public needs. * *" Later in the opinion he said:

"The various public utility acts which have been passed of recent years have

therefore generally declared either in precise language or implied in effect that it is not ordinarily for the general welfare to permit such corporations to compete with each other unless the circumstances show clearly that it is necessary to protect the interests of the public."

Again I say that the primary concern in such matters is to protect the interests of the public, not the investment of the property owner engaged in a public utility business.

The legislature of Arizona has no power whatever to pass legislation either requiring a municiality to purchase the physical property of a public utility operating within its corporate limits as a condition precedent to entering into competition with such public utility or to require it to pay damages to such public utility as a condition precedent to entering into competition with it. If a municipality enters the territory being served by the public utility and in the process of installing the city's own water system it damages the pipe line or other physical property of the utility it is liable in damages to the extent of the damage done. Or if the municipality in entering the field takes possession of the physical property of the public utility within its corporate limits, thus depriving such public utility of its possession and use of such property, the city is subject to damages for such taking under the law of eminent domain.

As was said by Chief Justice Waite in the Munn case, supra, the owner of a public utility submits to the control by the legislature for the common good *only to the extent of the interest he has granted to the public in its use.* The entire history of this law as it existed in England and as it has been developed in the United States clearly indicates that the control of the legislature over such property is limited primarily "to the protection of the people and promotion of the general welfare." In the instant case its powers are limited to requiring that public convenience and necessity be met in such matters as requiring adequate service to be rendered in the area affected for domestic use, fire protection, sewer and other uses as well as compelling it to meet public health requirements, etc. Beyond the limit of the interest granted to the public, such property is exclusively juris privati and therefore as free from legislative control as any other private property. I am convinced that no case can be found sustaining the view that the legislative control extends as far as the majority opinion on rehearing has gone. It is my view that the legislature, in the exercise of its police powers, must stay within the limits of police powers and that those powers do not authorize it to compel the city of Tucson to levy taxes upon its citizens for the purpose of reimbursing the Polar Water Company operating within its corporate limits for losses it may sustain as a result of competition with the municipality.