909 P.2d 435

**MOHAVE DISPOSAL, INC.,
Plaintiff–Appellant,**

v.

**CITY OF KINGMAN, an Arizona
municipal corporation,
Defendant–Appellee.**

**No. 1 CA–CV 93–0428.**

Court of Appeals of Arizona,
Division 1, Department D.

July 27, 1995.

Review Granted Jan. 17, 1996.*

** The Honorable Eino M. Jacobson, retired judge of the Arizona Court of Appeals was authorized to participate in this decision by the Chief Justice of the Arizona Supreme Court pursuant to the Arizona Constitution, art. VI, section 20, and Arizona Revised Statutes section 38–813.

* Corcoran, J., of the Supreme Court, did not participate in the determination of this matter.

Bonn, Luscher, Padden & Wilkins, Chartered by Paul V. Bonn, Randall D. Wilkins, John H. Cassidy, Phoenix, for plaintiff-appellant.

Charlotte A. Wells, Kingman City Atty., Kingman, for defendant-appellee.

Gammage & Burnham P.L.C. by Michael B. Withey, Cameron C. Artigue, Phoenix, for amicus curiae, Nat. Solid Waste Management Ass'n, for plaintiff-appellant.

Shelley & Bethea by J. LaMar Shelley, Mesa, for amicus curiae League of Arizona Cities and Towns, for defendant-appellee.

CONTRERAS, Presiding Judge.

Mohave Disposal, Inc., ("Mohave Disposal"), is a private corporation engaged in garbage collection service in Mohave County, Arizona. It sought compensation under Arizona Revised Statutes Annotated ("A.R.S.") section 9–516.A (1990) as a "public utility service" when the City of Kingman ("City") began providing competing garbage collection service in areas already served by Mohave Disposal.[1] We conclude that Mohave Disposal is neither a public service corporation within the meaning of our Constitution nor is it a public utility for purposes of A.R.S. section 9–516.A. Therefore, we affirm the trial court's judgment dismissing Mohave Disposal's suit against the City.

### FACTUAL AND PROCEDURAL HISTORY

The material facts are not in dispute. Mohave Disposal provides solid waste transportation and disposal services in unincorporated areas of Mohave County, Arizona. On December 16, 1991, the City annexed a portion of Mohave County in which Mohave

---

1. In a case with similar facts, this court determined that neither the state nor federal constitution requires a city to pay "just compensation" to a business that provides trash collection services to an area prior to annexation. *Laidlaw Waste* *Sys., Inc. v. City of Phoenix,* 168 Ariz. 563, 815 P.2d 932 (App.1991). The parties did not raise and thus the case did not discuss the applicability of A.R.S. section 9–516.A.

Disposal had been providing garbage collection services to residences and businesses. On January 6, 1992, the City Council adopted an ordinance imposing its trash collection fee on all city residents in the annexed area, whether or not they used the City's disposal services. As a result, Mohave Disposal lost customers in the annexed area.

In December 1992, Mohave Disposal filed the present lawsuit, claiming that the City had violated A.R.S. section 9–516.A by failing to compensate it for both the lost business and the equipment used in the annexed area.[2] A.R.S. section 9–516.A provides:

> It is declared as the public policy of the state that when adequate public utility service under authority of law is being rendered in an area, within or without the boundaries of a city or town, a competing service and installation shall not be authorized, instituted, made or carried on by a city or town unless or until that portion of the plant, system and business of the utility used and useful in rendering such service in the area in which the city or town seeks to serve has been acquired.

*Id.*

Mohave Disposal filed a motion for summary judgment and argued that the Arizona Supreme Court had expansively interpreted the words "public utility service" to include refuse collection and that it need not hold a certificate of convenience and necessity nor be a public service corporation in order to fall within the statute's protection.

The City filed a motion to dismiss, in part contending that Mohave Disposal, as neither a public utility nor a public utility service, was not entitled to compensation. The trial court denied Mohave Disposal's motion and granted the City's motion,[3] ruling that Mohave Disposal "did not provide 'public utility service under authority of law' as that phrase is used in A.R.S. section 9–516.A." Following entry of judgment, Mohave Disposal timely appealed.

## DISCUSSION

### A. Standard of Review

■ In reviewing the grant of a motion to dismiss, we accept as true the facts alleged by the non-moving party. *Donnelly Const. Co. v. Oberg/Hunt/Gilleland,* 139 Ariz. 184, 186, 677 P.2d 1292, 1294 (1984). We will uphold the dismissal if Mohave Disposal would not be entitled to relief under any construction of the facts alleged in support of its claim. *Id.*

■ We review the trial court's interpretation of a statute *de novo* as an issue of law. *Canon Sch. Dist. v. W.E.S. Constr. Co., Inc.,* 177 Ariz. 526, 529, 869 P.2d 500, 503 (1994). When statutory language is subject to conflicting interpretations, "we consider the statute's context; its language, subject matter, and historical background; its effects and consequences; and its spirit and purpose." *Hayes v. Continental Ins. Co.,* 178 Ariz. 264, 268, 872 P.2d 668, 672 (1994).

### B. Mohave Disposal Is Not A Public Service Corporation Within The Meaning Of Article 15, Section 2 Of The Arizona Constitution

We examine first whether by enacting A.R.S. section 9–516.A, the legislature intended to protect businesses like Mohave Disposal, which at that time were regarded as common carriers and thus fell within our Constitution's definition of "a public service corporation."

"In its modern form the power to grant monopolies is exercised through the granting [by the Corporation Commission] of a certificate of public convenience and necessity to the first, or favored applicant, and in denying a certificate to all others." *Visco v. State,* 95 Ariz. 154, 160, 388 P.2d 155, 159 (1963). Our Constitution defines the businesses which, through the issuance of a certificate of convenience and necessity, may be granted limited monopolies; these businesses are called pub-

---

2. Mohave Disposal does not appeal the trial court's dismissal of its claims that the City unconstitutionally deprived it of property without just compensation and was guilty of antitrust violations.

3. The City argues that this court has no jurisdiction over an appeal from the denial of Mohave Disposal's motion for summary judgment. Our conclusion that the trial court properly dismissed Mohave Disposal's claim disposes of this issue.

lic service corporations. Article 15 governs the Corporation Commission. It provides in part:

> All corporations other than municipal engaged in furnishing gas, oil, or electricity for light, fuel, or power; or in furnishing water for irrigation, fire protection, or other public purposes; or in furnishing, ... hot or cold air or steam for heating or cooling purposes; or engaged in collecting, transporting, treating, purifying and disposing of sewage ..., or in transmitting messages or furnishing public telegraph or telephone service, and all corporations other than municipal, operating as common carriers, shall be deemed public service corporations.

Ariz. Const. art 15, § 2.

Trash collection and disposal is not one of the described services or products, although the above section provides that a common carrier can be a public service corporation. Mohave Disposal argues that at the time the legislature adopted A.R.S. section 9–516, it intended to protect privately owned providers of garbage collection services from competing services offered by cities and towns.

■ The mistaken opinion of an individual senator,[4] the Attorney General,[5] or of the Corporation Commission as to which businesses are public service corporations is not determinative of legislative intent. Further, no presumption exists that a business is under the Corporation Commission's jurisdiction. *See Arizona Corp. Comm'n v. Continental Sec. Guards*, 103 Ariz. 410, 415, 443 P.2d 406, 411 (1968) (findings that crop dusting, tow truck, and trash collection businesses are not common carriers show the court's aversion to extending the power of the Corporation Commission). For the Corporation Commission to grant a monopoly to a private business, our Constitution and statutes must clearly sanction such action. *Cochise Sanitary Serv., Inc. v. Arizona Corp. Comm'n*, 2 Ariz.App. 559, 562, 410 P.2d 677, 680 (1966). "Every business in the state is subject to public control in some respects.

This does not mean that because 'regulated monopoly' has been accepted as a method of regulating public service corporations that the state ... can, without reason, grant monopolies in all businesses." *Visco*, 95 Ariz. at 169, 388 P.2d at 165.

The fact that the owners of some refuse collection businesses considered their businesses to be common carriers and that the Corporation Commission at one time granted certificates of public convenience and necessity to them is not determinative. The Arizona Supreme Court made it unmistakably clear in 1963 that such businesses were not common carriers and were neither entitled to certificates of convenience and necessity nor required to submit to regulation by the Corporation Commission. *Visco*, 95 Ariz. at 169, 388 P.2d at 165; *see also Cochise*, 2 Ariz.App. at 562, 410 P.2d at 680 (trash disposal businesses are not public service corporations; corporation commission must revoke certificates of convenience).

■ Thus, a mistaken belief that a business is a common carrier or a desire on the part of a business owner to obtain the benefits of limited competition cannot confer jurisdiction on the Arizona Corporation Commission beyond that granted by our Constitution or statutes. *See id.* Mohave Disposal is neither explicitly nor implicitly a public service corporation and on this basis cannot be a public utility. We turn next to the argument that it is nevertheless "a public utility service" entitled to compensation for losses caused by the City's competing service.

## C. Mohave Disposal Is Not A Public Utility Service Covered By A.R.S. Section 9–516

In *City of Tucson v. Polar Water Co.*, 76 Ariz. 126, 259 P.2d 561 (1953), *as modified*, 76 Ariz. 404, 408, 265 P.2d 773, 775 (1954), the Arizona Supreme Court held that a municipality, without payment of any compensation, could compete in newly-annexed areas

---

4. Senator Miller voted against the proposed legislation (S.B.107, 21st Leg., 2d Sess. (1954)) because he feared it would unfairly burden cities and towns and require purchase of all sorts of

"municipal services." Journal of the Senate, 21st Leg., 2d Sess. (1954) at 299.

5. *See* 1958 Att'y Gen.Op. No. 58–106 at 116–19.

with an existing water company holding a certificate of convenience and necessity. The court nevertheless acknowledged that the legislature could "protect the integrity" of a contract between a company operating a private utility under a certificate of convenience and necessity and "the investments made upon the faith thereof against damage or destruction by the activities of one of its municipalities." 76 Ariz. at 409, 265 P.2d at 776.

In response to the perceived economic unfairness of the *Polar Water* decision, the legislature adopted A.R.S. section 9–516 in 1954. *See* Journal of the House, 21st Leg., 2d Sess. 610–11 (1954) (comments of Douglas Holsclaw and Alvin Wessler, Representatives); *City of Mesa v. Salt River Project Agr. Imp. & Power Dist.*, 92 Ariz. 91, 101, 373 P.2d 722, 729 (1962), *appeal dism'd*, 372 U.S. 704, 83 S.Ct. 1018, 10 L.Ed.2d 124 (1963). Section 9–516.A provides:

> It is declared as the public policy of the state that when adequate *public utility service* under authority of law is being rendered in an area, within or without the boundaries of a city or town, a competing service and installation shall not be authorized, instituted, made or carried on by a city or town unless or until that portion of the plant, system and business of the utility used and useful in rendering such service in the area in which the city or town seeks to serve has been acquired.

*Id.* (emphasis added).

It is undisputed that the statute effectively requires a city or town, if it wishes to provide the same service already provided by a public utility, to acquire the utility's "plant, system and business ... used and useful in rendering such service in the area...." A.R.S. § 9–516.A. *Sende Vista Water Co., Inc. v. City of Phoenix*, 127 Ariz. 42, 617 P.2d 1158 (App.1980) (city must purchase water company's certificate of convenience and necessity); *Flecha Caida Water Co. v. City of*

*Tucson*, 4 Ariz.App. 331, 420 P.2d 198 (1966) (same).

The parties to this appeal dispute, however, whether Mohave Disposal is a "public utility service" entitled to the statute's protection. The City contends that the statute applies only to public service corporations as defined by Article 15, Section 2 of our Constitution and to municipalities providing the same services as provided by public service corporations. Mohave Disposal responds that the Arizona Supreme Court has applied the term "public utility" broadly to all businesses affected with the public interest. For the reasons that follow, we reject Mohave Disposal's argument.

First, A.R.S. section 9–516.A does not define "public utility service." *See* A.R.S. tit. 9, ch. 5, art. 2 (1990). Both parties point to other Arizona statutes defining "public utility" for support. Mohave Disposal cites A.R.S. section 9–521.5, which includes "garbage" in a list of what is a "utility undertaking"; the City cites A.R.S. section 40–491.5, which excludes garbage and trash collection services from its definition of "utility." But, neither statute is dispositive because the definitions in both sections are limited to the article in which they are found.

■ Second, we agree with Mohave Disposal that the term "public utility service" in A.R.S. section 9–516.A is not limited to public service corporations. Although subsections B and C of the statute specifically refer to public service corporations, subsection A refers only to the provision of "public utility service" without specifying by whom such service is provided. Had the legislature intended to limit the scope of subsection A to public service corporations, it could easily have done so.[6]

■ Moreover, the Arizona Supreme Court in *Mesa v. Salt River Project* held that

---

6. We do not believe that the terms are interchangeable although some puzzling language is found in an Arizona Supreme Court opinion just five months after the court decided *Mesa v. Salt River Project*. The court concluded that "[u]nder our Constitution, all public utilities are classified as public service corporations, hence, any distinction between the two, as applied to the facts of this case, is meaningless." *Application of*

a political subdivision [7] of the State, which was not a public service corporation but was engaged in the business of selling electricity at retail, was nonetheless a "public utility" for purposes of A.R.S. section 9–516.A. 92 Ariz. at 97–102, 373 P.2d at 726–30. The legislature had granted Salt River Project the right to sell power, and having extended its distribution system within the city limits of Mesa, Salt River Project had a property right in that system. *Id.* at 99, 373 P.2d at 728. The city could not force discontinuation of Salt River Project's service without paying just compensation. *Id.* at 100, 373 P.2d at 728.

The court also rejected an argument that the statute applied only to public service corporations; it held that the term "public utility" applied to "a business traditionally affected with public interest," and "is all-embracive, reaching every service wherein the public interest is affected by the character of the business conducted." *Id.* at 97, 102, 373 P.2d at 726, 730.

Mohave Disposal argues that its business is regulated in the interest of public health, is "affected with the public interest," and thus, is a public utility service. Two distinctions are significant, however. Unlike Mohave Disposal, Salt River Project is a political subdivision of the state. Additionally, Salt River Project provides water and electricity, both of which are the type of service or product provided by public service corporations.

Even if we consider that refuse disposal is a business "to which all manner of health regulations might be applied," *Visco*, 95 Ariz. at 167, 388 P.2d at 164, clearly more is required to demonstrate that such a business is a public service corporation, *id.* at 169, 388 P.2d at 165, or a public utility.

It was never contemplated that the definition of public service corporations ... be so elastic as to fan out and include businesses in which the public might be incidentally interested ... The public has some interest in all business establishments but that interest must be of such a nature that competition might lead to abuses detrimental to the public interest. *General Alarm v. Underdown,* 76 Ariz. 235, 238, 262 P.2d 671, 673 (1953).[8] Thus, despite the broad language of *Mesa v. Salt River Project,* we have found no cases in which the court has interpreted "public utility" to mean a refuse disposal business or any other type of business that is not providing public service corporation-like services or products. *See Trico Elec. Co-op., Inc. v. Arizona Corp. Comm'n,* 86 Ariz. 27, 33–34, 339 P.2d 1046, 1051 (1959) (a cooperative supplying electricity for light, fuel, or power is a public service corporation); *Natural Gas Serv. Co. v. Serv-Yu Coop.,* 70 Ariz. 235, 219 P.2d 324 (1950) (gas cooperative is a public service corporation; no distinction drawn between public utility and public service corporation); *Mesa v. Salt River Project,* 92 Ariz. at 101, 373 P.2d at 731.

In other instances in which a private business offered a service or product not described by our Constitution as a public service corporation activity yet affecting the public interest, our supreme court held that such a business was not a public service corporation either entitled to protection from a competitor offering the same service or forced to submit to regulation as a common carrier. *See General Alarm,* 76 Ariz. at 238, 262 P.2d at 672 (a fire and emergency alarm service was not "clothed with a public interest to the extent clearly contemplated by law which subjects it to government control"); *Visco,* 95 Ariz. at 164, 388 P.2d at 162. In *Visco,* the court noted that, just as an emergency signal and fire alarm system "was directly connected with the public obligation to put out fires," so the trash hauling business was "directly connected with the public obligation to protect health." *Id.* Yet, neither was a public service corporation.

*Trico Elec. Coop., Inc.,* 92 Ariz. 373, 385, 377 P.2d 309, 318 (1962).

**7.** "The attributes which are generally regarded as distinctive of a political subdivision are that it exists for the purpose of discharging some function of local government, that it has a prescribed area, and that it possesses authority for subordinate self-government by officers selected by it." *McClanahan v. Cochise College,* 25 Ariz.App. 13, 16, 540 P.2d 744, 747 (1975).

**8.** The predecessor statute in effect at the time the court decided *General Alarm* was S.B. 107, Ch. 105, 1954 Ariz.Sess.Laws 159 (codified at Code 1939 § 16–604b (Supp.1954)).

374

A close reading of *Mesa v. Salt River Project* leads us to conclude that Salt River Project as an entity is *sui generis*[9] and that the language in that opinion was never intended to suggest that *any* business affecting the public interest is a public utility. Salt River Project's services are the type usually provided by a public service corporation, although it is an entity that cannot be called a public service corporation. By contrast, Mohave Disposal's business cannot classify it as a public service corporation. Additionally, gas, electric, water, telephone, or other services necessitate a costly physical plant, distribution system, or infrastructure that the legislature might reasonably conclude justifies granting a limited monopoly in return for state regulation. Refuse collection does not require the sort of fixed, expensive delivery system associated with other utility services. To hold that Mohave Disposal nevertheless is a public utility would be contrary to the implications, if not the express holdings, of *Visco, Cochise,* and *General Alarm.*

Monopolies are the exception, and free enterprise the rule. From this principle and existing case law, we find no sound basis to conclude that Mohave Disposal is a public utility within the meaning of section 9–516. Accordingly, we hold that "public utility" as used in section 9–516.A includes (a) public service corporations and (b) political subdivisions of the state, including cities, towns, and special districts providing the services or products of public service corporations. Because garbage collection service does not fall within this definition, we affirm the trial court's judgment. The City need not purchase or condemn Mohave Disposal's property before offering competing refuse collection service.

VOSS and THOMPSON, JJ., concur.

---

9. The Salt River Project Agricultural Improvement & Power District is a political subdivision of the state pursuant to Article 13, section 7 of the Constitution and "a municipal corporation of a peculiar type." *Rubenstein Const. Co. v. Salt River Proj. Agr. Imp. & Pow. Dist.,* 76 Ariz. 402, 404, 265 P.2d 455, 456 (1953). Article 13, section 7 provides that power, electrical, and agri-

cultural improvement districts, among others, "shall be political subdivisions of the State." As a political subdivision, it may engage in the public service corporation functions delineated in the Constitution. While doing so, it remains a political subdivision and is not transformed into a public service corporation. *Id.*