922 P.2d 308

**MOHAVE DISPOSAL, INC., Appellant,**

v.

**CITY OF KINGMAN, an Arizona municipal corporation, Appellee.**

**No. CV–95–0407–PR.**

Supreme Court of Arizona, En Banc.

Aug. 27, 1996.

Bonn, Luscher, Padden & Wilkins by Paul V. Bonn, John H. Cassidy, Randall D. Wilkins, Phoenix, for Appellant.

Charlotte A. Wells, Kingman City Attorney, Kingman, for Appellee.

Shelley & Bethea by J. LaMar Shelley, Mesa, for Amicus Curiae League of Cities and Towns.

Gammage & Burnham, P.L.C. by Michael B. Withey, Cameron C. Artigue, Phoenix, for Amicus Curiae National Solid Waste Management Association.

## OPINION

JONES, Justice.

In this appeal, we review the superior court's dismissal of a complaint filed by Mohave Disposal, Inc., a solid waste transportation and collection company, against the City of Kingman. The complaint alleged, *inter alia,* that Kingman violated A.R.S. § 9–516(A) by annexing a portion of Mohave Disposal's service area and thereafter imposing garbage collection and disposal fees on residents of the annexed territory in connection with the city's competing service. The court of appeals affirmed the dismissal. Our jurisdiction is predicated on Ariz. Const. art. VI, § 5(3), and Ariz.R.Civ.App.P. 23. We vacate the court of appeals' opinion, reverse the dismissal of Mohave Disposal's complaint, and remand the case to the trial court for further proceedings consistent with this opinion.

## PROCEDURAL HISTORY

Mohave Disposal's complaint sets forth three counts, one of which is the subject of this review, namely, whether the city failed to comply with Arizona Revised Statutes § 9–516(A). The statute provides:

> It is declared as the public policy of the state that when adequate *public utility service under authority of law* is being rendered in an area, within or without the boundaries of a city or town, a competing service and installation shall not be authorized, instituted, made or carried on by a city or town unless or until that portion of the plant, system, and business ... in which the city or town seeks to serve, has been acquired.

(Emphasis added.) The count in question asserts that Kingman failed to compensate Mohave Disposal for lost service contracts, business, and physical equipment after Kingman (a) annexed the area of Mohave County called "Kingman Camelback," which allegedly was part of Mohave Disposal's service area, and (b) imposed its garbage collection fees regardless of whether residents of the annexed area used Kingman's services.

Mohave Disposal moved for summary judgment on this issue, and Kingman moved to dismiss the complaint for failure to state a claim. The trial court denied Mohave Disposal's motion and granted Kingman's motion to dismiss, deciding, pursuant to the statute, that Mohave Disposal does not provide a "public utility service under authority of law." The court made no findings of fact or conclusions of law and dismissed the other two counts of the complaint. The court of appeals affirmed. *Mohave Disposal, Inc. v.*

*City of Kingman,* 184 Ariz. 368, 909 P.2d 435 (App.1995).

## DISCUSSION

■ On review of a trial court's decision granting a motion to dismiss, we assume the truth of the allegations set forth in the complaint and uphold dismissal only if the plaintiffs would not be entitled to relief under any facts susceptible of proof in the statement of the claim. *Menendez v. Paddock Pool Constr. Co.,* 172 Ariz. 258, 836 P.2d 968 (App. 1991). The complaint alleges:

> Mohave Disposal had agreed with Mohave County authorities to provide solid waste transportation and disposal services, on an at-cost basis, to those residents of the outlying and thinly-populated portions of Mohave Disposal's service area, in order to protect the public health and safety which would otherwise be harmed by an absence of solid waste transportation and disposal services.

For purposes of this review, we therefore assume, as alleged in the complaint, the existence of a contractual arrangement to provide garbage collection services within a designated area.

The case turns on the meaning of the statutory phrase "public utility service under authority of law." A.R.S. § 9–516(A). The court of appeals, construing the statute, addressed only the first part of the phrase and concluded that Mohave Disposal did not perform a "public utility service." 184 Ariz. at 372–74, 909 P.2d at 439–41. Having reached that conclusion, the court saw no need for further analysis and held that the statute afforded Mohave Disposal no relief. We disagree with the court's analysis and conclusion.

### Public Utility Service

■ This court determined previously that refuse collection companies are not public service corporations under article XV, section 2, of the Arizona Constitution. *Visco v. State,* 95 Ariz. 154, 163–64, 388 P.2d 155, 161–62 (1963). Relying on *Visco,* the court of appeals correctly pointed out that Mohave

Disposal is not a public service corporation. 184 Ariz. at 371, 909 P.2d at 438.

The court of appeals then turned its attention to the important question whether an entity that does not enjoy status under law as a public service corporation may nevertheless perform a "public utility service" within the meaning of section 9–516(A). Seeking to define "public utility service," the court relied on our language in *City of Mesa v. Salt River Project* that section 9–516(A) "is all embracive, reaching every service wherein the public interest is affected by the character of the business conducted." 92 Ariz. 91, 102, 373 P.2d 722, 730 (1962). We held that the Salt River Project (SRP), though not a public service corporation, nevertheless performed a public utility service, thus entitling it to the same statutory protection claimed here by Mohave Disposal. The court of appeals in the instant case, however, distinguished Mohave Disposal and SRP on the basis that SRP is, by law, a political subdivision of the state and provides a service, i.e., transmission and delivery of electric power, identical to that provided by public service corporations. 184 Ariz. at 373, 909 P.2d at 440. The court of appeals wrote:

> Monopolies are the exception, and free enterprise the rule. From this principle and existing case law, we find no sound basis to conclude that Mohave Disposal is a public utility within the meaning of section 9–516. Accordingly, we hold that "public utility" as used in section 9–516.A includes (a) public service corporations and (b) political subdivisions of the state, including cities, towns, and special districts providing the services or products of public service corporations.

184 Ariz. at 374, 909 P.2d at 441. This constitutes a decidedly narrower view of section 9–516(A) than we think the legislature intended and certainly narrower than the prior decisions of this court would require.

In *City of Mesa,* we analyzed SRP's legal status, concluding that it was not a public service corporation but that it was a political subdivision of the state. 92 Ariz. at 97, 373 P.2d at 726. We thus interpreted section 9–516(A) in a case in which, if the court of appeals' analysis in the instant case were

correct, the simple solution would have been to rely on SRP's status as a political subdivision. We did not, however, rely on that status; instead, we concluded that while SRP is not a public service corporation as defined in the state constitution, the sale of electricity by SRP nevertheless constituted a public utility service:

> [W]hatever may be the District's exact status, plainly, the effect of selling electricity to the ultimate consumer at retail is to place the District in the position of engaging in business as a public utility for this is a business traditionally affected with public interest.

*Id.*

Therefore, this court's "all embracive" definition, expressed in *City of Mesa*, suggests strongly that "public utility service," within the meaning of section 9–516(A), may be performed by an entity that is neither a public service corporation nor a political subdivision, so long as it otherwise satisfies the requisite qualifications of a business traditionally affected with the public interest.

The court of appeals in this case stated that "despite the broad language of *Mesa v. Salt River Project*, we have found no cases in which the court has interpreted 'public utility' to mean a refuse disposal business or any other type of business that is not providing public service corporation-like services or products." 184 Ariz. at 373, 909 P.2d at 440. In support of this statement, the court cited *Trico Elec. Coop., Inc. v. Arizona Corp. Comm'n*, 86 Ariz. 27, 33–34, 339 P.2d 1046, 1051 (1959), *Natural Gas Serv. Co. v. Serv-Yu Coop.*, 70 Ariz. 235, 219 P.2d 324 (1950), and *City of Mesa v. Salt River Project, supra*. *Trico* and *Serv-Yu Coop*, however, involved companies' attempts to avoid classification as public service corporations, raising the same issue in each case—whether the Arizona Corporation Commission could assert jurisdiction over the entity in question. Here, the issue is quite different, namely, whether the City of Kingman, as a governmental competitor, must compensate Mohave Disposal for the loss of business and service

contracts, and perhaps other assets, pursuant to the statute, as in the case of a taking. The Corporation Commission's jurisdiction is not an issue in the instant case.

*Serv-Yu Coop* pre-dates our decision in *City of Tucson v. Polar Water*, 76 Ariz. 126, 259 P.2d 561 (1953), *as modified*, 76 Ariz. 404, 408, 265 P.2d 773, 775 (1954), and the enactment of A.R.S. § 9–516(A) (adopted 1954). In *Polar Water*, we held that municipalities could compete in annexed areas with existing public service corporations operating under certificates of public convenience and necessity, but we also stated that "[t]here is no constitutional basis for saying that the legislature may not require its municipalities to pay just compensation for the damage or destruction of the business, franchise, or property of lawfully operating private utilities, even though such damage or destruction results from competition." 76 Ariz. at 408–09, 265 P.2d at 775.

Almost immediately, the legislature enacted section 9–516(A), whose language is not confined simply to public service corporations operating under certificates of public convenience and necessity or political subdivisions of the state. Rather, its plain meaning indicates inclusion of any entity which performs "public utility service under authority of law."

*Serv-Yu Coop* involved competing private interests. The issue was whether a cooperative could gain a competitive advantage against a public service corporation operating in the same area by avoiding the Corporation Commission's jurisdiction. The court held that whether a company was a public utility [1] depended on what the company did or proposed to do and whether the company "deal[t] with the service of a commodity in which the public has generally been held to have an interest." 70 Ariz. at 239, 219 P.2d at 326. We concluded:

> "Regardless of the right of the public to demand and receive service in a particular instance, the question whether a business enterprise constitutes a public utility is

---

1. Within the context of *Serv-Yu Coop*, we read the use of the term "public utility" as a synonym

for public service corporation.

determined by the nature of its operations. Each case must stand upon the facts peculiar to it. *A corporation that serves such a substantial part of the public as to make its rates, charges and methods of operations a matter of public concern, welfare and interest subjects itself to regulation by the duly constituted governmental authority.*"

70 Ariz. at 242, 219 P.2d at 328, *quoting Industrial Gas Co. v. Public Utilities Comm'n,* 135 Ohio St. 408, 21 N.E.2d 166, 168 (1939)(emphasis supplied).

Similarly, in *Trico,* a case which also involved competing private interests, several members of an electric cooperative filed a complaint with the Corporation Commission requesting that the Commission take jurisdiction over the cooperative and regulate its rates. Consistent with *Serv–Yu Coop,* we stated that "to be a public service corporation [a company's] business and activities must be such as to make its rates, charges and methods of operation a matter of public concern, clothed with a public interest to the extent contemplated by law which subjects it to governmental control—its business must be of such a nature that competition might lead to abuse detrimental to the public interest." 86 Ariz. at 34–35, 339 P.2d at 1052; *see also General Alarm, Inc. v. Underdown,* 76 Ariz. 235, 238–39, 262 P.2d 671, 672–73 (1953) (holding classification as public service corporation requires that business and activities be such that rates, charges, and methods of operation are matters of public concern clothed with public interest, but denying public service corporation status because residential and commercial alarm company's services benefitted not the general public, but private property owners).

Thus, companies tried to avoid monopoly regulation in both *Serv–Yu Coop* and *Trico,* and consumers asked for protection. We were called upon to determine whether to violate the "free enterprise" general rule, and our deference to free enterprise led us to recognize the Corporation Commission's jurisdiction only in limited circumstances. Importantly, neither *Serv–Yu Coop* nor *Trico* involved the statutory question raised here, whether a particular service being performed

constituted a "public utility service" within the meaning of section 9–516(A) because the statute did not exist when the cases were decided. Even if it had existed, the issue presented here would not have been before the court in those cases.

■ In this case, Mohave Disposal contends, in effect, that the "free enterprise" general rule was violated when Kingman annexed the "Kingman Camelback" area and allegedly used its inherent market advantage to Mohave Disposal's detriment. The issue, therefore, is not whether we should intrude on free enterprise by placing an industry under the regulatory control of the Corporation Commission, but whether we should recognize a property right in Mohave Disposal's activities, such that A.R.S. § 9–516(A) will require Kingman to acquire Mohave Disposal's investment under the latter's alleged contract with the County. This difference in context means that *Serv–Yu Coop* and *Trico* are inapposite, and the doctrine therein set forth does not control the scope of section 9–516(A).

We look instead to legislative intent and must decide whether the legislature that enacted A.R.S. § 9–516(A) intended the term "public utility service" to be broadly construed. *State v. Williams,* 175 Ariz. 98, 100, 854 P.2d 131, 133 (1993) (goal in construing a statute is "to fulfill the intent of the legislature that wrote it.").

■ We hold that the legislature did intend a broad construction. The legislature could explicitly have limited section 9–516(A) to public service corporations, but it did not. Similarly, if, as the court of appeals decided, the legislature intended to limit the scope to public service corporations and political subdivisions, it could have expressly done so. Such specific categories of corporate or political status could have been easily enumerated. Instead, the legislature chose to use a term, "public utility service," which this court believes should be accorded broader application.

■ We therefore reiterate our statement in *City of Mesa v. Salt River Project* that section 9–516(A) "is all embracive, reaching *every service wherein the public interest is*

*affected* by the character of the business conducted." 92 Ariz. 91, 102, 373 P.2d 722, 730 (1962) (emphasis supplied).[2] Because solid waste collection is traditionally associated with the public interest, we hold that the service performed by Mohave Disposal qualifies as a "public utility service" within the meaning of the statute in question.

### Under Authority of Law

■ Mere performance of a "public utility service" does not, of itself, fully satisfy the requirements of section 9–516(A). We therefore address the separate question whether Mohave Disposal operated under "authority of law." The City of Kingman would limit section 9–516(A) to companies operating under some form of legal authority that derives from an enabling statute, or a contract or franchise with the state government. In contrast, Mohave Disposal argues that "authority of law" can mean no more than a private operation which performs pursuant to, and in compliance with, a state or local regulatory scheme.

■ We believe the Kingman argument construes "authority of law" too narrowly, but we also conclude that mere compliance with an existing state or local regulatory scheme, as urged by Mohave Disposal, is too broad and would be insufficient to cloak a company with "authority of law" within the meaning of section 9–516(A). "[A]uthority of law" implies that a company seeking protection under the statute must have not only a clearly defined source of legal authority by which it may act in the public interest, that is, authority which derives from state or local government, but also that such company must have acted or performed its services in such a way as to create an identifiable property interest pursuant to the legal authority with which it is clothed. We find these implied requirements both in our case law and in the legislative history of section 9–516(A). In *Polar Water*, the case that spawned section 9–516(A), we stated with regard to public service corporations acting under certificates of public convenience and necessity:

> By the issuance of its certificate of convenience and necessity, the state contracts in effect that *if the certificate holder will make adequate investment* and render competent and adequate service, he may have the privilege of a monopoly as against any other private utility. Certainly the state has the power by legislative act *to protect the integrity of such a contract and the investments made upon the faith thereof* against damage or destruction by the activities of one of its municipalities.

76 Ariz. at 409, 265 P.2d at 775–76 (emphasis added).

During the legislative debate on section 9–516(A), Senator Holsclaw said: "[Small private water companies] entered and pioneered suburban areas the city could and would not serve, they took the risk, and in most cases, invested all they had...." *Journal of the House of Representatives*, 21st Leg., 2d Reg. Sess.1954, at 610 (emphasis added).

Moreover, in *City of Mesa*, we found that SRP had obtained a property right in its activities because (a) private and commercial customers had accepted SRP's services, (b) SRP had invested in equipment and delivery systems to serve its customers, and (c) SRP had availed itself of the opportunity to become a political subdivision. 92 Ariz. at 99–100, 373 P.2d at 728.

Here, the legislature permits local governments to regulate solid waste collection if local regulations are not less strict than state regulations. A.R.S. § 49–765. Mohave County therefore had both state and local authority to enter into a contract with Mohave Disposal for collection of solid waste in its outlying areas at a regulated rate. Moreover, the legislature generally protects private enterprise in the area of solid waste management. *See* A.R.S. § 49–746(A). Thus, under the operative facts in this record, it can be said that Mohave Disposal was

---

2.  Indeed, we note that the legislature may have specifically considered garbage collectors as eligible beneficiaries of § 9–516. Speaking in opposition to the proposed law, Senator Miller said: "I want to point out that, while all of the talk on this Bill has centered around domestic water facilities, the Act would apply to any kind of public utility, including rural fire fighting companies, *garbage collection*, and any other proper municipal service." *Journal of the Senate*, 21st Leg.1954, at 299 (emphasis added).

positioned to operate under authority of private law as permitted and condoned by public law.

In addition, Mohave Disposal alleges that it took advantage of its contractual arrangement with Mohave County and operated according to its terms. If the allegations of the complaint are true, Mohave Disposal may well possess a property right by virtue of the alleged contract with the County, thus permitting Mohave Disposal to characterize its activity as under "authority of law" pursuant to section 9–516(A).

Because we are restricted to considering Mohave Disposal's complaint, however, we do not hold as a matter of law that Mohave Disposal necessarily performed its services under authority of law. The record is clearly insufficient at this point to justify any such conclusion. We therefore remand the case to the trial court where a determination with findings and conclusions may be made after the parties have had full opportunity to present evidence and brief the issue.

■ The following guidance may be helpful to the trial court in making its determination. In our opinion, when, as here, there is no express grant of statutory authority, a court should look to other factors in determining whether a company, claiming protection under section 9–516(A), operated under "authority of law." These factors include: (a) whether there was an enforceable contract between the company seeking protection and the governing body of the jurisdiction effectively licensing the company to perform the service in question; (b) whether the geographic area to be served was defined with sufficient clarity; (c) whether the company made a substantial investment in reliance on the contract; and (d) whether the company performed on the contract for a reasonable period of time before annexation occurred and maintained a reasonable performance record.

■ If "authority of law" exists, the company seeking protection will also have to establish not only the extent of its invest-

ment pursuant to the agreement but that the investment was specifically made to enable its performance within the area annexed. Services performed or investment made with respect to territory outside the area annexed by the city, or even outside the area which the County may have licensed Mohave Disposal to serve, would have no bearing on this inquiry. In this case, the arrangement between Mohave County and Mohave Disposal, whatever that arrangement may have been, seems to include outlying areas of Mohave County, which may or may not include the "Kingman Camelback" area. We assume, however, that the issue in this case would not have arisen unless the City of Kingman had annexed specified geographic territory which Mohave Disposal claims the right to serve under its alleged contract with the County. These are matters better left to the trial court because that is the forum in which the necessary factual determinations must be made and related issues first resolved.

## CONCLUSION AND DISPOSITION

We reverse the trial court's dismissal of Mohave Disposal's complaint and vacate the court of appeals' opinion. We remand the case to the trial court for further proceedings consistent with this opinion.

Specifically, we hold that Mohave Disposal engaged in a "public utility service" under A.R.S. § 9–516(A). The trial court must decide, however, whether Mohave Disposal operated under "authority of law," as we have defined that term.[3]

FELDMAN, C.J., ZLAKET, V.C.J., and MOELLER and MARTONE, JJ., concur.

---

**3.** If the court determines that Mohave Disposal performed a "public utility service under authority of law," A.R.S. § 9–516(A) also requires a determination whether the service was "adequate" in order to justify compensation.